IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| JERRY W. ANDERSON,              )<br>                                                 )<br>             Plaintiff,                      )<br>                                                 )<br>v.                                               )<br>                                                 )<br>CORRECTIONAL MEDICAL     )<br>SERVICES, DEBRA CLYDE, M.D., )<br>DR. LITTLE, GRANT CLARK,      )<br>M.D., PRISON HEALTH SERVICES, )<br>                                                 )<br>             Defendants.                 )<br>_____) | Case No. CV 02-155-S-LMB<br><br>**MEMORANDUM DECISION<br>AND ORDER** |

Pending before the Court is Defendants' Motion to Dismiss (Docket No. 175). Having reviewed the record in this matter, the Court has determined that oral argument would not significantly assist in determining the issues presented in the Motion. Accordingly, the Motion to Dismiss will be decided on the written record before the Court. After considering the record, the Court has determined that under Idaho law, Plaintiff's 42 U.S.C. § 1983 claim abated upon his death. Therefore, Defendant's Motion to Dismiss is GRANTED.

**I.**

**BACKGROUND**

Plaintiff was previously in the custody of the Idaho Department of Correction (IDOC). During the time relevant to the allegations in his Complaint, Plaintiff was incarcerated first at the Idaho State Correctional Institution (ISCI) and then at the Idaho Correctional Center (ICC). *Complaint*, p. 2, 6, 7 (Docket No. 4). He was released on a medical parole on June 24, 2003. *See Notice of Change of Address* (Docket No. 46). On April 4, 2002, Plaintiff filed his civil rights complaint against Correctional Medical Services, Prison Health Services, and Drs. Terry Little,

**MEMORANDUM DECISION AND ORDER -**1-

Debra Clyde, and Grant Clark, alleging that Defendants were deliberately indifferent to his serious medical condition.

Prior to Plaintiff's incarceration, he was diagnosed with metastatic neuroendocrine carcinoma of the liver, and, in 1995, he underwent surgery to remove a single malignant tumor from his liver. Plaintiff claims that when he was incarcerated in 1997 he informed Correctional Medical Services (CMS) physicians that he had liver cancer, that he informed medical personnel that he was at considerable risk for a recurrence of the cancer, and that he repeatedly requested follow-up treatment for his liver cancer once he was incarcerated.

In June of 2000, Defendant Dr. Clyde ordered a CT scan of Plaintiff's abdomen. The scan showed a return of metastatic carcinoma in the liver. Five months later, between November of 2000 and June of 2001, Plaintiff was given chemotherapy treatments. Plaintiff claims that Dr. Clyde discontinued all cancer treatments in June of 2001. Yet, there is nothing in the record showing that the treating oncologist determined there were no viable treatment options available for Plaintiff. So, though Plaintiff was scheduled for an appointment with his treating oncologist, as the medical record shows, that appointment was cancelled. Plaintiff claims that he requested further cancer treatment.

On March 4, 2003, the Court appointed Leo N. Griffard as *pro bono* counsel for Plaintiff, and counsel assisted him in his attempts to obtain a medical parole. *Order* (Docket No. 34). After Plaintiff was released on parole, the Court appointed Lowell N. Hawkes as trial counsel. *Order* (Docket No. 78). Plaintiff's counsel issued a Notice of Deposition to perpetuate Plaintiff's testimony, and Plaintiff's deposition was taken on May 5, 2005.

The Court ultimately appointed Dr. Robert Lane of Seattle, Washington, as an expert pursuant to Federal Rule of Evidence 706. I also determined that it would be necessary to vacate the May 2005 trial date in order to give Defendants time to submit the relevant medical records to

**MEMORANDUM DECISION AND ORDER -**2-

Dr. Lane and arrange for his deposition.  The trial was reset for June 27, 2005.

Defendants filed a Motion to Vacate the trial set for June 27, 2005, requesting additional time to identify rebuttal experts and depose the Court's designated expert.  The Court granted Defendants' Motion and rescheduled the trial for August 22, 2005.

Plaintiff died on July 19, 2005.  On July 25, 2005, Defendants filed a Motion for Protective Order, requesting that the Court vacate Defendants' depositions.  Thereafter, Defendants filed the instant pending motion, requesting that Plaintiff's civil rights action be dismissed.

## II.

## LEGAL DISCUSSION

A cause of action under 42 U.S.C. § 1983 survives the death of a plaintiff for the benefit of plaintiff's estate only if the law of the forum state creates a right of survival.  *Davis v. Or. State Univ.*, 591 F.2d 493, 498 (9th Cir. 1978) (citing *Robertson v. Wegmann*, 436 U.S. 584 (1978)).  The question of whether a § 1983 claim survives a plaintiff's death was exactly the question asked and answered by the Supreme Court of Idaho in *Evans v. Twin Falls County*, 118 Idaho 210, 796 P.2d 87 (1990).[1]  In *Evans*, deputy sheriffs of Twin Falls County allegedly went to the home of John and Juanita Evans to execute a judgment entered against them.  One of the deputies allegedly restrained Juanita Evans from using the telephone, grabbed her arms, twisted them, and knocked her glasses from her face.  *Id.* at 211, 796 P.2d at 88.

The Evans brought claims against Twin Falls County and several deputy sheriffs for false arrest, assault and battery, interference with contract, and civil rights violations under § 1983.  The Evans' claim for damages was primarily based on emotional distress caused by the deputies'

---

[1] At the time the decision in *Evans v. Twin Falls County* was issued I was a Justice of the Supreme Court of Idaho and concurred in the opinion.

**MEMORANDUM DECISION AND ORDER -**3-

alleged assault and battery.

After the complaint was filed, Juanita Evans died, and her estate was substituted as a party to the action.  *Id.*  The trial court granted summary judgment in favor of the defendants on all claims set forth in the complaint.  John Evans appealed the dismissal of the claims, and the *Evans* court upheld the district court's summary judgment ruling.

In affirming the state district court's granting of summary judgment, the Supreme Court of Idaho held that Mrs. Evans' tort actions for pain and suffering did not survive her death.  In doing so, the Supreme Court discussed IDAHO CODE § 5-311, which states:

> (1)When the death of a person is caused by the wrongful act or neglect of another, his or her heirs or personal representatives on their behalf may maintain an action for damages against the person causing the death, . . . whether the wrongdoer dies before or after the death of the person injured.

The Supreme Court also analyzed IDAHO CODE § 73-116, which provides that the "rules of the common law are in effect in Idaho unless modified by other legislative enactments."  *Evans*, 118 Idaho at 215, 796 P.2d at 92.[2]

Second, the Supreme Court of Idaho addressed the survivability of Mrs. Evans' § 1983 claim.  The state district court had dismissed the civil rights claim based on the substantive determination that the facts did not give rise to a constitutional violation.  *Id*. at 216, 796 P.2d at 93.  However, even though the state district court did not rule on the issue of whether a civil rights claim abates upon the death of a plaintiff, the Supreme Court also addressed that issue.  In doing so, that Court held that the § 1983 claim had abated upon Mrs. Evans' death because a § 1983 claim is a personal cause of action, "actionable only by persons whose civil rights have been violated."  *Id*.

---

[2]  In *Evans*, the state district court also relied upon *Vulk v. Haley*, 112 Idaho 855, 859, 736 P.2d 1309, 1313 (1987), which applied the Idaho statutes and determined that an action for pain and suffering does not survive the death of the injured person.

**MEMORANDUM DECISION AND ORDER -4-**

In *Evans*, the Supreme Court of Idaho also acknowledged that the civil rights statute directs the court to determine whether or not the law of the forum state is inconsistent with the Constitution and laws of the United States. *Id*. at 217, 796 P.2d at 94. The court described the principal underlying policies of § 1983 "as compensating those injured by an infringement of their civil rights and deterring official illegality." *Id*. The Court in *Evans* then cited to *Robertson*, stating that "[s]ince we have previously concluded that the uncontradicted medical evidence in the record justifies the trial court's summary judgment against plaintiff's claims that the alleged illegality of the officers caused the plaintiff's death, this case is controlled by the decision of the United States Supreme Court in the *Robertson* case, . . . ." *Id*. at 218, 796 P.2d at 95.[3] The Supreme Court concluded in *Evans* that "application of the Idaho common law precluding survivability of a tort claim was not inconsistent with 42 U.S.C. §§ 1983, 1988."[4] *Id*. Thus, the *Evans* opinion uses broad and sweeping language that opens the door for a defendant in a civil rights case to argue that a § 1983 claim always abates upon a plaintiff's death. Therefore, the holding in *Evans v. Twin Falls County* appears to foreclose civil rights claims in all cases where the plaintiff dies, despite the language in *Robertson* that describes scenarios that are beyond its narrow holding. *Robertson,* 436 U.S. at 594 (stating that a "different situation might well be presented [if state law] significantly restricted the types of actions that survive.").

That is, the *Evans* holding appears to restrict all § 1983 claims in which the plaintiff dies before a trial, including a scenario in which the defendant allegedly caused the death of the

---

[3] In *Robertson*, 436 U.S. 584 (1978), the United States Supreme Court held that a §1983 civil rights claim abated on the plaintiff's death. It also recognized that the Louisiana state law that called for abatement was not inconsistent with a federal common law of survival in civil rights actions, and emphasized that the holding was a narrow one, "limited to situations in which no claim is made that state law generally is inhospitable to survival of § 1983 actions . . . ." *Id.* at 593–94.

[4] 42 U.S.C. § 1988 sets forth the remedies for civil rights violations and does not provide for a right of survivorship. *Robertson*, 436 U.S. at 587.

**MEMORANDUM DECISION AND ORDER -**5-

plaintiff. This seems to me to be contrary to the policy behind the civil rights statute. Nonetheless, the plain meaning of the broad holding in *Evans* unavoidably leads to the conclusion that Plaintiff's § 1983 claims in the present action must be found to have abated upon his death. This court can not, on its own initiative, limit the plainly-broad holding of *Evans* even to prevent abuses, i.e., even to discourage defendants from delaying litigation in the anticipation of a plaintiff's death in order to achieve an abatement of the claims against them. Clearly, *Evans* holds that *all* § 1983 claims abate upon the Plaintiff's death.

A survey of state laws providing for the survivability of civil rights actions indicates that Idaho is in the small minority of states that allow a civil rights claim to abate based upon the non-survivability rule found in common law. *See* Daniel J. Feld, Annotation, *Survivability of Civil Rights Cause of Action Based on 42 U.S.C.A.§ 1983*, 42 A.L.R. Fed. 163 §§ 2, 4 (1970); 42 A.L.R. Fed. 163, § 4 (Supp. 2004); *see also* Utah Code Ann. § 78-11-12 (West 2005) (stating causes of action arising out of personal injury to the person or death caused by the wrongful act or negligence of another do not abate upon the death of the wrongdoer or injured person).

It is truly unfortunate that Plaintiff died before he had his day in court. I, and others involved in the case, had assumed that Plaintiff would live much longer than he did. This erroneous expectation, on my part at least, was largely based on the medical expert's reports, which emphasized that Plaintiff's tumor was slow growing. *Ex. A. to Defs.' Submission of Expert Reports*, p. 5 (Docket No. 180, Att. 1) ("It is clear from the examination of the huge tumor, which was removed from [Plaintiff's] liver [before incarceration], that it was both huge and very slow-growing and accordingly had been both present and large for some time and something that he had been willing to live with."); *id.* at p. 6 ("Subsequent scans showed slowing of progression through the first six months of 2001."); *id.* ("[T]he tumor is so slow growing that there is no measurable change over the course of 30 days."); *id.* at p. 7 ("The fact that [Plaintiff] is still alive in June of

**MEMORANDUM DECISION AND ORDER -**6-

2005, fully four years after abandoning chemotherapy, testifies to the very slow, indolent growth of his tumor . . . ."). In retrospect, I sincerely regret not having moved the case along faster to enable Mr. Anderson to have his day in court while he was alive. Nonetheless, because *Evans* is controlling, and because I am required, as a federal judge, to recognize and apply controlling state law in this case, there is no alternative but to grant Defendants' Motion to Dismiss.

The Court expresses its gratitude and appreciation to Plaintiff's *pro bono* counsel, Lowell N. Hawkes and Ryan S. Lewis, for their willingness to accept the appointment I requested of them and to pursue the claim in a highly competent, effective, and professional manner. Their out of pocket costs and expenses incurred in representing Plaintiff, Jerry W. Anderson, will be reimbursed through the Court's Pro Bono Program funds upon counsel filing an itemization and summary.

### III.

### ORDER

NOW THEREFORE IT IS HEREBY ORDERED that Defendants' Motion to Dismiss (Docket No. 175) is GRANTED and this action is dismissed in its entirety with prejudice.

DATED: **November 18, 2005**.

Larry M. Boyle
United States District Court